UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARK L. HOEMMELMEYER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 1:04-CV-00166 |
| | : | |
| v. | : | |
| | : | **ORDER** |
| | : | |
| CSX TRANSPORTATION INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 16), Plaintiff's Memorandum in Opposition
(doc. 21) and Defendant's Reply (doc. 26).

**BACKGROUND**

This case involves a suit under the Federal Employer's
Liability Act ("FELA") 45 U.S.C. §§ 51-60, based on a violation of
the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. §§ 20301-06.
The FSAA imposes a number of safety requirements on railroads, which
are actionable under FELA. O'Donnell v. Elgin, Joliet & E. Ry. Co.,
338 U.S. 384, 390-91 (1949).

The parties agree as to the basic facts of this case. On
or about November 10, 2002, Plaintiff was working for Defendant
railroad company performing switching operation duties at the
Queensgate Yard in Cincinnati (doc. 16). Plaintiff attempted to

pull a "cut-lever" in order to uncouple a rail car (Id.).  Plaintiff
alleges this coupling mechanism was defective and did not operate
properly (Id.).   When Plaintiff tried to pull the lever a second
time, he suffered an injury to his left arm and shoulder (Id.).
Plaintiff brought his Complaint on February 25, 2004, alleging
negligence, the failure to provide a safe place to work, and a
violation of 49 U.S.C. §20302(a)(1)(A), the "Coupler Act," for
Defendant's use of a defective coupling mechanism on its railroad
line (doc. 1).

On February 28, 2005, Defendant filed its motion for
summary judgment, arguing that it is entitled to judgment as a
matter of law because 1) it had no actual or constructive notice of
any defect in its equipment and therefore cannot be held liable
under a negligence theory, and 2) it cannot be held liable under the
Federal Safety Appliance Act, which in its view only applies to
railcars "in use" on a "railroad line" (doc. 16).  Plaintiff filed
its Response on April 19, 2005 (doc. 21), to which Defendant replied
on May 16, 2005 (doc. 26).  This matter is now ripe for the Court's
ruling.

**ANALYSIS**

**I.  Summary Judgment Standard**

The narrow question that this Court must decide on a
motion for summary judgment is whether there exists a "genuine issue
as to any material fact and [whether] the moving party is entitled

-2-

to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-

-3-

moving party relies.'" <u>Guarino</u>, 980 F.2d at 405 (quoting <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

## II. Discussion

### A. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment because in its view (1) there is no evidence that it was negligent and (2) the Federal Safety Appliance Act ("FSAA") is not applicable to the present motion (doc. 16). As for its first argument, Defendant contends that under the provisions of the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, an employer is not the insurer of the safety of his employees while they are on duty, but rather is only liable for negligence (<u>Id</u>.). Essentially, Defendant argues it is not strictly liable for injuries of its employees (<u>Id</u>.).

-4-

Under its theory that Plaintiff must prove it negligent, Defendant argues that it had no actual or constructive notice or knowledge of the defect prior to Plaintiff's injury, and in time to have the defect corrected (Id.). Defendant argues that even Plaintiff himself admitted in deposition that a defective cut lever is not something easily observed with the naked eye, that Plaintiff had heard no complaints regarding this particular car, and that after inspection it is possible that the lever could be bent (Id.). Accordingly, Defendant argues, there is no evidence that the lever was defective for long enough time such that Defendant could have known of such defect, and therefore Plaintiff cannot establish Defendant was negligent (Id.).

Next, Defendant attacks Plaintiff's claim under the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20302(a)(1)(A) (Id.). Defendant argues that the FSAA, which imposes strict liability on railroads for certain mandated safety features, including automatic couplers, only applies to railcars that are "in use" on a "railroad line" (Id.). Defendant argues that under either of two competing approaches, the Fifth Circuit's in Trinidad v. Southern Pac. Transp. Co., 949 F.2d 187, 189 (5th Cir. 1991), or the Fourth Circuit's in Phillips v. CSX Transp., Inc., 190 F. 3d 285, 289 (4th Cir. 1999), the railroad car that allegedly injured Plaintiff was not "in use" (Id.). Defendant argues it is clear that Plaintiff was involved in a switching operation, and that the FSAA

-5-

does not apply to switching operations, but rather only to fully assembled trains that have passed pre-departure inspection (Id.). Defendant further argues that though the Sixth Circuit has not ruled specifically dealing with the "in use" or "on the line" requirements of the FSAA, Erskine v. Consolidated Rail Corp., 814 F.2d 266 (6th Cir. 1987), has held that the FSAA only applies "when the train is engaged in movement as a train," not switching operations (Id.).

Defendant concludes its motion by arguing that Plaintiff's injury is not the type sought to be prevented by the FSAA (Id.). Defendant, citing Kavorkian v. CSX Transp., Inc., 33 F.3d 570, 572 (6th Cir. 1994), argues that Congress enacted the FSAA to reduce injuries of railroad workers who were standing between rail cars during the coupling process (Id.). Defendant argues that in this case, Plaintiff was not attempting to couple to cars, but rather was attempting uncouple the car from a train (Id.). In this circumstance, Defendant argues, Plaintiff was outside the scope of the harm the FSAA sought to prevent (Id.).

### B. Plaintiff's Response

Plaintiff does not contest the facts as presented by Defendant, but argues that Defendant's interpretation of the FSAA is fundamentally wrong (doc. 21). Plaintiff contends that different laws apply to switching operations and train movements, and that Defendants simply apply the wrong law--train movement law-- to this case (Id.). Switching operations refer to the process by which

individual rail cars are moved from track to track and coupled together to form a train or, in the inverse, to the process by which a train that has arrived at a destination is uncoupled and individual cars are placed on different tracks (Id). Provisions of the FSAA relating to switching operations, the Automatic Coupler Act, were designed to protect railroad switchmen engaged in the coupling and uncoupling of individual cars, as prior to enactment, thousands of railroad switchmen were maimed or killed during coupler-related accidents (Id.).

In contrast to switching operations, a train movement occurs at the end of a switching operation, after the rail cars have been coupled together to a locomotive engine, and eventually leave the railroad yard for their ultimate destination (Id.). Provisions relating to train movements, the Train Brake Act, were designed to ensure that fully assembled trains had adequate braking systems–-usually air brakes--that could be controlled by the conductor (Id.). Prior to enactment of the Train Brake Act, the speed of trains was regulated by railroad brakemen who would run along the top of rail cars, often jumping from one car to the next, to engage individual handbrakes on individual cars of the train (Id.). The Train Brake Act, Plaintiff contends, has nothing to do with this case (Id.).

Plaintiff explains that for the majority of the twentieth century, the FSAA was codified at 45 U.S.C. § 1-11 (Id.). Section 2 of the FSAA was the Automatic Coupler Act and its language applied

-7-

to "any car" being used or hauled by railroads (Id.).  Accordingly, Plaintiff contends, there is no language suggesting it should be confined to any one particular aspect of railroad operations (Id.). Sections 1 and 9 of the FSAA are provisions of the Train Brake Act, and apply to "any train," therefore applying to train movements of cars that have been coupled together rather than to individual rail cars (Id.).  In 1994, Congress recodified the FSAA at 49 U.S.C. § 20302, but maintained the distinction between "vehicles" (individual rail cars) and "trains" (Id.).  Plaintiff, citing United States v. Erie RR Co., 237 U.S. 402, 407-08 (1915), states the Supreme Court has explained the different scope of application of the train brake and coupler provisions, and held that the coupler provisions apply to switching operations as well as train movements (Id.). Subsequent to Erie, Plaintiff argues, there have been at least six Supreme Court opinions applying the provisions of the Automatic Coupler Act to switching operations (Id. citing O'Donnell v. Elgin Joliet & E. Railway Co., 337 U.S. 929 (1949)("a coupler which broke in the switching operation was a violation of the Act"); San Antonio & Arkansas Pass R. Co. v. Wagner, 241 U.S. 476 (1916); Atlantic City R. Co. V. Parker, 242 U.S. 56 (1916); Carter v. Atlanta & St. A.B. Railway Co., 338 U.S. 430 (1949); Affolder v. New York C. & St. L.R. Co., 339 U.S. 96 (1950); and Norfolk & Western Railway Co. v. Hiles, 516 U.S. 400 (1996)(Automatic Coupler Act applied to switching operations but was not violated)).  Plaintiff notes that even

<u>Kavorkian v. CSX Transp., Inc.</u>, 33 F.3d 570, 572 (6th Cir. 1994), which was cited by Defendants in their motion, applied the coupling provisions to a switching operation (<u>Id</u>.).

Plaintiff signals that all but one of the cases relied on by Defendants in their assertion that the FSAA is inapplicable to switching operations are actually train brake cases that rely on a train brake analysis (<u>Id</u>.). The exception is <u>Phillips v. CSX Transp. Inc.</u>, 190 F.3d 285 (4th Cir. 1999)(FSAA does not apply to switching operations), which Plaintiff states is based on flawed legal reasoning (<u>Id</u>.). Instead, Plaintiff directs the Court to <u>Synar v. Union Pacific R.R. Co.</u>, No. 12-99-00428-CV, 2001 WL 1263573 at *15 (Tex. Ct. App. Oct. 17, 2001), which rejected <u>Phillips</u> and which held that two separate standards are utilized under the FSAA, one for the Train Brake Act, and one for the Automatic Coupler Act and other acts of general application (<u>Id</u>.). Thus Plaintiff argues the standard required under the Train Brake Act, that the railcar be "in use" on a "railroad line," is inapplicable to switching operations (<u>Id</u>.).

Plaintiff next addresses Defendant's argument that he is not protected by the Automatic Coupler Act because he did not go between the ends of two cars (<u>Id</u>.). Citing <u>Louisville & Nashville RR Co. v. Layton</u>, 243 U.S. 617, 621 (1917) and <u>United Transportation v. Lewis</u>, 711 F.2d 233, 249 (D.C. Cir. 1983)("indeed, if he is injured because of a defective coupler, he may recover without even

having gone between the cars at all"), Plaintiff argues Defendant's
position lacks merit (Id.). Plaintiff further contends that
Defendant's argument that the Automatic Coupler Act does not apply
to uncoupling operations ignores the express language of the Act,
which requires couplers that are "capable of being uncoupled" (Id.
citing 49 U.S.C. § 20302 (1994)).

As a final matter, Plaintiff addresses Defendant's
argument that he has proffered insufficient evidence of negligence
(Id.). Plaintiff argues that prior to his injury, Defendant
inspected the car with the defective lever, but failed to discover
the defect (Id.). Under Shenker v. Baltimore & Ohio Railroad Co.,
374 U.S. 1, 8-10 (1963), Plaintiff argues, the railroad has a duty
to inspect cars regardless of how long it takes to complete such
inspection (Id.). Plaintiff argues that under FELA decisions
interpreting railroad liability, the Supreme Court holds railroads
to a higher standard of conduct than under common law principles of
negligence (Id. citing Urie v. Thompson, 337 U.S. 163 (1949); and
Rogers v. Missouri Pacific RR Co., 352 U.S. 500 (1957)).
Accordingly, Plaintiff argues, a finding of negligence is supported
if there is any evidence that the railroad's negligence "played any
part, even the slightest, in producing" the injury (Id. citing
Rogers v. Missouri Pacific RR Co., 352 U.S. 500, 506 (1957)).
Plaintiff concludes that any factual determinations, including the
issue of whether the defective lever could have been bent after

-10-

inspection, are properly within the province a jury (Id.).

### C. Defendant's Reply

In Defendant's Reply, it reiterates its position based on Phillips, 190 F. 3d 285, that the car that injured Plaintiff was not "in use" nor "on the line" (doc. 26). Defendant argues there is no distinction in the application of the FSAA as it applies to couplers or automatic train brakes (Id.). Under the facts of this case, Defendant argues, the car in question was not "in use" nor "on its line" since it was merely involved in a switching operation (Id.). Defendant further argues that as to Plaintiff's negligence claim, CSX may only be held liable for breaching its duty to provide a safe workplace if it should have known of a potential hazard and yet failed to exercise reasonable care to inform and protect Plaintiff (Id.). Defendant reiterates its view that nothing in the record establishes that CSX knew or should have known of the allegedly defective lever and/or automatic coupler, so Plaintiff's negligence claim fails (Id.).

## III. Analysis

Having reviewed this matter, the Court finds Plaintiff's position well-taken. The Court agrees with the Court of Appeals of Texas, as expressed in Synar, that the Fourth Circuit's decision in Phillips is based on the faulty premise that the FSAA does not apply to cars involved in switching operations. Plaintiff makes a convincing case that from the inception of the FSAA, the safety of

-11-

railroad workers involved in switching operations was clearly the object of Congress. Clearly, Supreme Court and lower court precedent demonstrates this is the case. United States v. Erie RR Co., 237 U.S. 402, 407-08 (1915), O'Donnell v. Elgin Joliet & E. Railway Co., 337 U.S. 929 (1949),("a coupler which broke in the switching operation was a violation of the Act"); San Antonio & Arkansas Pass R. Co. v. Wagner, 241 U.S. 476 (1916); Atlantic City R. Co. V. Parker, 242 U.S. 56 (1916); Carter v. Atlanta & St. A.B. Railway Co., 338 U.S. 430 (1949); Affolder v. New York C. & St. L.R. Co., 339 U.S. 96 (1950); Norfolk & Western Railway Co. v. Hiles, 516 U.S. 400 (1996), and Kavorkian v. CSX Transp., Inc., 33 F.3d 570, 572 (6th Cir. 1994).

In 1994, Congress re-codified the FSAA while retaining the distinction between the coupler and safety provisions that apply to "vehicles," and the train brake provisions that apply to trains. 49 U.S.C. § 20302(a)(1) and (5)(1994). Congress was explicitly clear that its codification was intended to effect only technical improvements, without substantive change. 103 P.L. 272, 108 Stat. 745 (July 5, 1994). As such the pre-1994 case law interpreting the FSAA applies with equal force to the current codification, and there is no reason to accept Defendant's argument that the current version of the statute imposes the "use" requirement on couplers and train brakes in the same way.

Having decided that the FSAA protects railroad workers

-12-

involved in switching operations, the Court next addresses Defendant's arguments that the switching provisions do not apply to Plaintiff, and that Plaintiff has not adequately alleged that Defendant had constructive or actual notice of the alleged defect. The Court does not find well-taken Defendant's arguments that Plaintiff is not protected by the FSAA because he was not injured while standing in between two railroad cars, and because he was uncoupling as opposed to coupling two cars. Such a narrow reading of the Act is incorrect. Louisville & Nashville RR Co. v. Layton, 243 U.S. 617, 621 (1917), United Transportation v. Lewis, 711 F.2d 233, 249 (D.C. Cir. 1983), and 49 U.S.C. § 20302 (1994)(requiring couplers "capable of being uncoupled").

A FSAA violation is per se negligence in a FELA suit, such that if the injured employee shows a FSAA violation, the railroad is strictly liable for any injury resulting from the violation. O'Donnell v. Elgin, Joliet & E. Ry. Co., 338 U.S. 384, 390-91 (1949). Defendant clearly has a duty to inspect all cars so as to protect its employees, like Plaintiff, who work in switching operations. Shenker v. Baltimore & Ohio Railroad Co., 374 U.S. 1, 8-10 (1963). The Court agrees that a finding of negligence is supported if there is any evidence that the railroad's negligence "played any part, even the slightest, in producing" the injury (Id. citing Rogers v. Missouri Pacific RR Co., 352 U.S. 500, 506 (1957)).

Accordingly, the Court finds that factual determinations

-13-

remain as to what sort of inspection Defendant conducted, whether such inspection included the cut-lever that allegedly injured Plaintiff, whether the defect could have possibly occurred between inspection and prior to Plaintiff's encounter with the cut-lever, and the extent of Plaintiff's injuries. These determinations are properly in the province of the jury in a FELA case. <u>Bailey v. Central Vermont Ry.</u>, 319 U.S. 350 (1943), <u>Rogers v. Missouri Pacific RR Co.</u>, 352 U.S. 500 (1957). A reasonable jury could find Defendant's failure to inspect the cut-lever played a part in Plaintiff's injury. Therefore, Defendant's arguments that Plaintiff has not adequately alleged a negligence case are therefore not well taken.

**CONCLUSION**

The Court does not find Defendant's view correct that the FSAA is inapplicable to Plaintiff, who was involved with switching operations when he was allegedly injured. Plaintiff's arguments against Defendant's motion are well-taken in their entirety (doc. 16). A reasonable jury could find Plaintiff was injured, at least in part, due to Defendant's failure to adequately inspect the cut-lever in question.

Accordingly, the Court hereby DENIES the Motion for Summary Judgment of Defendant CSX Transportation, Inc., SCHEDULES the final pretrial conference in this matter for November 10, 2005 at 2:00 p.m., and SETS the four-day jury trial for December 13, 2005

on an on-deck basis.

        SO ORDERED.


Dated: August 30, 2005       /s/ S. Arthur Spiegel
                                    S. Arthur Spiegel
                                    United States Senior District Judge